UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JENNY CHAN, ) | |
| ) | |
| Plaintiff, ) | Case No. 24-cv-2386 |
| ) | |
| v. ) | Hon. Steven C. Seeger |
| ) | |
| TARGET CORPORATION ) | |
| d/b/a TARGET STORES, and ) | |
| MIRIAM ALBRECHT, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Jenny Chan suffered injuries after taking a spill on a wet floor in a local Target. She filed this slip-and-fall case in state court against Target Corporation and one of the store managers, Miriam Albrecht.

Defendants removed the case to federal court based on diversity jurisdiction. The parties then filed two motions about whether Albrecht belongs in the case. The answer has a bearing on whether the case belongs in federal court.

Albrecht moved to dismiss the complaint for failure to state a claim. As she sees things, she doesn't belong in the case because she wasn't an active tortfeasor. And if she doesn't belong in the case, then her citizenship shouldn't count for purposes of diversity jurisdiction. She invokes the doctrine of fraudulent joinder.

Chan responded by filing a motion to remand. As she points out, the complaint alleges that Albrecht contributed to the accident by committing a series of negligent acts and omissions. In her view, the complaint alleges a basis to include Albrecht in the case. If that's right, then there is not complete diversity of citizenship, so the Court lacks subject-matter jurisdiction.

For the reasons stated below, the motion to remand is granted, and the motion to dismiss is denied as moot.

## Background

Jenny Chan went shopping on a rainy day at a Target store in Lake Zurich, Illinois. She used a motorized scooter provided by Target. When she stepped off the scooter, Chan lost her footing on the wet floor. She slipped and fell, causing serious injuries. *See generally* Cplt. (Dckt. No. 1-1).

The reply brief offers a few more details. Motorized shopping carts often "track in water, ice and snow inside the store." *See* Pl's. Reply, at 2–3 (Dckt. No. 20). And the Lake Zurich Target has a "slippery tile floor" which gets "dangerously slippery . . . when water gets on it." *Id.* at 4.

Miriam Albrecht, a store manager, provided some additional details about the accident in her affidavit. The affidavit doesn't move the needle when it comes to the motions at hand. But it does help from a storytelling perspective.

The day of the accident was soggy. It was raining and drizzling, and the parking lot was wet. *See* Albrecht Aff., at ¶ 3 (Dckt. No. 19-1). The security camera captured Chan "walk[ing] across the wet parking lot." *Id.* at ¶ 7.

A companion drove a motorized cart outside of the store and across the wet parking lot. *Id.* He exited the cart, and then Chan climbed aboard. *Id.* She then drove it across the wet parking lot and into the store. *Id.* Chan "stepped off the wet shopping cart with shoes she had been wearing as she traversed the wet parking lot," and then slipped and fell. *Id.* at ¶ 8.

Chan filed suit against Target and Albrecht. *See* Cplt., at ¶ 16 (Dckt. No. 1-1). Based on her affidavit, Albrecht held the title of Team Lead-Service and Engagement. *See* Albrecht Aff.,

2

at ¶ 2 (Dckt. No. 19-1). At the time of the accident, she served as the Closing Team Lead at the Lake Zurich store. *Id.*[1]

The complaint includes one negligence claim against each Defendant. The allegations against each Defendant are similar, but not quite the same. The complaint blames Target for installing flooring that was slippery when wet. *See* Cplt., at ¶ 5 (Dckt. No. 1-1). The complaint alleges that Target and Albrecht breached a duty of care by allowing the entryway to become hazardous, and so on. *Id.* at ¶¶ 13, 19.

Chan filed suit in state court. Target and Albrecht timely removed the case to federal court, invoking this Court's diversity jurisdiction. *See* Notice of Removal (Dckt. No. 1). The notice of removal asserts that Chan is a citizen of Illinois, and that Target is a citizen of Minnesota. *Id.* at ¶ 9.

But the notice of removal asserts that Albrecht is a citizen of Illinois. *Id.* That poses a potential jurisdictional problem, because federal courts have diversity jurisdiction only if there is complete diversity. *See* 28 U.S.C. § 1332; *see also Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L. Ed. 435 (1806); *Fid. & Deposit Co. of Md. v. City of Sheboygan Falls*, 713 F.2d 1261, 1264 (7th Cir. 1983) ("For a case to be within the diversity jurisdiction of the federal courts, diversity of citizenship must be 'complete,' meaning that no plaintiff may be a citizen of the same state as any defendant.").

Albrecht argues that the case belongs in federal court based on the doctrine of fraudulent joinder. Fraudulent joinder prohibits a party from joining another party in an action for the sole purpose of preventing diversity of citizenship. A court can dismiss a fraudulently joined party, and thus restore diversity.

---

[1] Apparently, Target does not use the term "manager" – it uses the term "Team Leader." *See* Pl's. Reply to Defs.' Resp. to Pl's. Mtn. to Remand, at 1 (Dckt. No. 20).

Albrecht moved to dismiss the complaint on the ground that she was not an active tortfeasor. *See* Mtn. to Dismiss, at ¶ 5 (Dckt. No. 11). If she wasn't an active tortfeasor, then Chan has no claim against her. And if Chan has no claim against her, then Albrecht shouldn't count for diversity purposes. *See* Notice of Removal, at ¶ 9 (Dckt. No. 1) (arguing that Chan "fraudulently joined [Albrecht] in this action as she was not an active tortfeasor").

Chan responded by filing a motion to remand. *See* Pl's. Mtn. to Remand (Dckt. No. 15). In her view, Albrecht belongs in the case because she breached a duty of care to Chan as a customer. And if Albrecht belongs in the case, then there is no diversity of citizenship, so the case belongs in state court. *Id.* at ¶¶ 2–3.

## Legal Standard

Federal courts have limited jurisdiction. "They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted).

Diversity jurisdiction is one way to get into federal court. District courts have jurisdiction when the matter is between "citizens of different States" and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a)(1).

The statute requires "complete diversity between the parties." *See Page v. Democratic Nat'l Comm.*, 2 F.4th 630, 636 (7th Cir. 2021) (quotation marks omitted). "[N]o party on the plaintiff's side of the suit" can "share citizenship" with a "party on the defendant's side." *Id.* (citation omitted).

If a plaintiff sues in state court but "could have invoked the original jurisdiction of the federal courts," a defendant can remove the action to federal court. *See Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009) (citing 28 U.S.C. § 1441(a)). The party

4

seeking removal has the burden to demonstrate subject matter jurisdiction. And "federal courts should interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court." *Id.*

If a federal court lacks jurisdiction over a removed case, it must remand the case to state court. *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

## Analysis

The fraudulent joinder doctrine stops a party from destroying diversity by bringing a futile claim against a nondiverse party. The idea is that you don't count if you don't belong. From a jurisdictional perspective, a fraudulently joined defendant counts for nothing.

"Fraudulent joinder occurs when a nondiverse party is added solely to deprive the federal courts of diversity jurisdiction." *See* 16 James Wm. Moore *et al.*, *Moore's Federal Practice* § 107.52[4][a] (3d ed. 2020). "A plaintiff typically may choose its own forum, but it may not join a nondiverse defendant simply to destroy diversity jurisdiction." *Schur*, 577 F.3d at 763.

The "[f]raudulent-joinder doctrine tries to strike a reasonable balance among the policies to permit plaintiffs the tactical prerogatives to select the forum and the defendants they wish to sue, but not to reward abusive pleading by plaintiffs, and to protect defendants' statutory right to remove." *See* 14C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3723.1 (4th ed. 2020).

The fraudulent joinder doctrine provides that an "out-of-state defendant's right of removal premised on diversity cannot be defeated by joinder of a nondiverse defendant against whom the plaintiff's claim has no chance of success." *See Morris v. Nuzzo*, 718 F.3d 660, 666 (7th Cir. 2013). The doctrine "permits a district court considering removal 'to disregard, for

5

jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction.'" *See Schur*, 577 F.3d at 763 (citation omitted).

So, "[t]he citizenship of fraudulently joined, nondiverse parties is disregarded for the purpose of determining diversity." *See* 16 James Wm. Moore *et al.*, *Moore's Federal Practice* § 107.52[4][a] (3d ed. 2020). In other words, a court can throw a jurisdictional stowaway overboard.

Fraudulent, in this context, is a term of art. It is a bit of a misnomer. It does not suggest malfeasance or call into question the subjective intent of the plaintiff. *See Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992) (citing 14A Charles Alan Wright, *et al.*, *Federal Practice and Procedure* § 3723 (2d ed. 1985)); *see also* 14C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3723.1 (4th ed. 2020) ("Thus, the plaintiff's intention that the joinder of a particular party or a claim assignment should defeat federal subject-matter jurisdiction is immaterial to the propriety of the removal, as long as the use of one of those devices is not merely colorable or made in bad faith."); 16 James Wm. Moore *et al.*, *Moore's Federal Practice* § 107.52[4][a] (3d ed. 2020) ("The term 'fraudulent joinder' is a bit misleading because the doctrine requires neither a showing of fraud nor joinder."). "[I]n most cases fraudulent joinder involves a claim against an in-state defendant that simply has no chance of success, whatever the plaintiff's motives." *Poulos*, 959 F.2d at 73.

Fraudulent joinder is a steep hill to climb. *See Schur*, 577 F.3d at 764 ("Fraudulent joinder is difficult to establish . . . ."). "The Seventh Circuit has explained that a defendant seeking removal based on alleged fraudulent joinder has the 'heavy burden' of proving that, after the Court resolves all issues of law and fact in the plaintiff's favor, the plaintiff cannot establish a

6

cause of action against the diversity-defeating defendant in state court." *See Jones v. Philip Morris USA, Inc.*, 2021 WL 12179449, at *1 (N.D. Ill. 2021) (Dow, J.) (citing *Schur*, 577 F.3d at 764); *see also Poulos*, 959 F.2d at 73 ("The defendant must show that, after resolving all issues of fact *and law* in favor of the plaintiff, the plaintiff cannot establish a cause of action against the in-state defendant.") (emphasis in original).

A district court must ask whether there is "any reasonable possibility that a state court would rule against the non-diverse defendant[.]" *See Majewski v. Dick's Sporting Goods, Inc.*, 2021 WL 76819, at *3 (N.D. Ill. 2021).

The standard is "even more favorable to the plaintiff than the standard that applies to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." *See Jones*, 2021 WL 12179449, at *1; *Salah v. Wal-Mart Stores, Inc.*, 2017 WL 131581, at *2 (N.D. Ill. 2017) ("Even if a state court might ultimately find that a plaintiff has failed to state a claim against a defendant, joinder of the claim is not 'fraudulent' for purposes of this court's jurisdiction so long as the issue of state law is subject to reasonable argument on both sides."). In sum, "[t]he climb is steep, and the burden is heavy." *See Majewski*, 2021 WL 76819, at *3.

Here, Target and Albrecht removed the case to federal court, so they have the burden to establish the existence of subject-matter jurisdiction. *See Poulos*, 959 F.2d at 73. "[A] plaintiff's choice of forum is presumed valid, and the Court must resolve any doubts about jurisdiction in favor of remand." *D.C. ex rel. Cheatham v. Abbott Lab'ys Inc.*, 323 F. Supp. 3d 991, 993 (N.D. Ill. 2018); *see also Schur*, 577 F.3d at 758. If in doubt, the case must go back to state court. The tie goes to a plaintiff's choice of forum.

The question boils down to whether the presence of Albrecht, the store manager, in the case destroyed diversity.

A person's job title does not decide the question of liability, one way or the other. A person's status as the store manager does not create liability. And on the flipside, a person's status as the store manager does not immunize that person from liability, either.

Albrecht's status as the store manager, without more, is not enough to give rise to a claim against her. Premises liability runs to the owner of the property, and is not enough to create liability for individual employees. *See Engelman v. Hogan*, 2022 WL 159733, at *3 (N.D. Ill. 2022); *Majewski*, 2021 WL 76819, at *3 ("Defendant Jurczak cannot be liable simply for being the store manager – her managerial status does not give rise to strict liability. But she can be held liable if she breached an independent duty running to Plaintiff."); *Brady v. Menard, Inc.*, 2017 WL 201375, at *2 (N.D. Ill. 2017) ("Some allegations, such as the failure to maintain the premises in a reasonably safe condition or the failure to provide adequate rules or protocols, clearly could not generate liability for individual employees."); *Knebel v. Wal-Mart Stores, Inc.*, 2009 WL 3124769, at *2 (S.D. Ill. 2009) ("[A]n agent cannot be held liable simply for being a supervisor . . . .").

On the other hand, the fact that Albrecht served as the store manager does not immunize her from liability, either. Under Illinois law, "[a] person is not absolved of personal liability to a third person . . . merely because at the time such person was an employee acting within the scope of the employment." *Schur*, 577 F.3d at 765 (quoting Romualdo P. Eclaea, Christine M. Gimeo & Thomas Muskus, *Employment § 202*, in 17 *Illinois Law and Practice* (2008)). Being on the clock does not mean that an employee is off the hook.

"A master and servant are each liable for injuries caused solely by the negligent act of the servant in the course of his employment. The servant is liable because he is the active tort-feasor and committed the act which caused the injury." *See Lasko v. Meier*, 67 N.E.2d 162, 166 (Ill.

8

1946). "An agent is subject to liability to a third party harmed by the agent's tortious conduct. Unless an applicable statute provides otherwise, an actor remains subject to liability although the actor acts as an agent or an employee, with actual or apparent authority, or within the scope employment." *See* Restatement (Third) of Agency § 701 (2006).

The question boils down to whether the employee breached a duty of care to the injured person. "It is well settled that every person owes a duty of ordinary care to all others to guard against injuries which naturally flow as a reasonably probable and foreseeable consequence of an act, and such a duty does not depend upon contract, privity of interest or the proximity of relationship, but extends to remote and unknown persons." *See Schur*, 577 F.3d at 766 (citation omitted).

Under Illinois law, "[a]n employee . . . is liable only to the extent that [s]he is an active tortfeasor." *See Engelman*, 2022 WL 159733, at *3 (citation omitted). An employee is an active tortfeasor if "she caused the incident or actively contributed to the act which caused the incident." *See Snyder v. Wal-Mart Stores, Inc.*, 2018 WL 1586246, at *6 (N.D. Ill. 2018) (citing *Brady*, 2017 WL 201375, at *2).

At first blush, the phrase "active tortfeasor" might make it sound like the employee must have committed an affirmative act of negligence, as opposed to a failure to act. In reality, the concept is simply that the employee must have played a personal role, in one form or another, for the events that led to the accident. That is, the employee must have personally breached a duty of care.

The breach doesn't have to be an affirmative act. The breach of the duty of care can be an act *or* a failure to act. After all, a big slice of tort law involves failures to act. "An agent's

9

individual tort liability extends to negligent acts *and omissions* as well as to intentional conduct." *See* Restatement (Third) of Agency § 701 cmt. b (2006) (emphasis added).

But the duty must run from the agent to the injured person, not from the agent to the principal. A breach of a duty owed by the agent to the principal is not enough to hold the agent liable to a third party. An agent is liable to a third party only if the agent breached a duty to that third party. *See Schur*, 577 F.3d at 766 ("[A]n agent who breaches a duty owed *solely* to her principal is not independently liable to an injured third party. . . . But an agent is liable in tort to a third party harmed by the agent's conduct when the agent breaches an independent duty that she owes *to the third party*.") (emphasis in original).

Albrecht argues that the complaint does not plausibly allege that she was an active tortfeasor. In her view, "[t]here is certainly no basis to conclude" that Albrecht was aware of any water inside the store before the accident, and no basis to conclude that Albrecht "did anything to actively create" the dangerous condition. *See* Defs.' Resp., at 5–6 (Dckt. No. 19). Albrecht argues that Chan does not "allege any facts or any specific acts by [Albrecht] that would have caused the floor to become wet, other than a general failure to prevent or remedy the hazard." *Id.* at 10.

Albrecht was at the store on the day of the accident, and she had some managerial responsibility. *See* Cplt., at ¶ 16 (Dckt. No. 1-1). But again, a claim cannot rest on her title alone. A person does not become an active tortfeasor simply by serving as the manager on duty. *See Roh v. Starbucks Corp.*, 2015 WL 232374, at *1 (N.D. Ill. 2015).

But the complaint does more than allege that Albrecht was the manager. The complaint gives a long list of negligent acts or omissions by Albrecht. The complaint alleges that Albrecht

10

failed the maintain the storefront and allowed it to become dangerous. *See* Cplt., at ¶ 19(a) (Dckt. No. 1-1). She "knew or should have known of the hazardous condition." *Id.*

The complaint gives a number of reasons why Albrecht allegedly acted as an active tortfeasor. She failed to train employees, failed to monitor the conditions on the floors, and failed to mark the slippery floors for unwary customers. *Id.* at ¶ 19(b), (c), (d). She failed to correct the condition of the wet floors, failed to warn customers, and failed to put down rags or a carpet to soak up the mess, and so on. *Id.* at ¶ 19(e), (f), (g).

Maybe those allegations won't pan out. But at this early stage, the question is simply whether the complaint alleges that Albrecht was an active tortfeasor. And it does. *See Allison v. Gordon Food Serv., Inc.*, 2021 WL 6118176, at *5 (C.D. Ill. 2021) ("Plaintiffs have alleged that Wallace himself, or employees under his direction, committed negligent acts or omissions. While Wallace cannot be held liable simply because of his managerial role, he may be liable for breaching an independent duty."); *Brady*, 2017 WL 201375, at *2–3; *Salah*, 2017 WL 131581, at *4–5.

Sometimes courts have found fraudulent joinder when the manager in question wasn't on duty that day. *See, e.g.*, *Jordan v. Moran Foods, LLC*, 2020 WL 2063939, at *3 (S.D. Ill. 2020) ("Pichee's affidavit is also uncontroverted and states that she was not working or scheduled to work at the time Jordan fell. There being no evidence or non-conclusory allegations to contradict Pichee's affidavit, the Court concludes that there is no reasonable possibility that Jordan could succeed on her claims against Pichee."); *Odom-Green v. Wal-Mart Stores, Inc.*, 2013 WL 5967738, at *2 (S.D. Ill. 2013); *Lester-Washington v. Wal-Mart Stores, Inc.*, 2011 WL 13261448, at *2–3 (S.D. Ill. 2011); *Faucett v. Ingersoll-Rand Mining & Machinery Co.*, 960 F.2d 653, 655 (7th Cir. 1992) ("Minor's uncontradicted affidavit, essentially stating that he has

11

had absolutely nothing to do with any roof-bolters at the Peabody Mine, is sufficient to establish fraudulent joinder.").

In those cases, the complaints failed to allege a nexus between the store manager and the accident. The complaints did not articulate any basis for holding them liable. After all, they weren't even there at the time of the accident. There was no reason to include those employees in the case, so fraudulent joinder applied.

But that's not this case. The complaint at hand articulates a basis for holding Albrecht personally responsible for the hazardous floors.

The parties spar about the facts in their briefs. At the end of the day, maybe Defendants will prevail. But here and now, this Court must "resolv[e] all issues of fact . . . in favor of the plaintiff." *See Poulos*, 959 F.2d at 73.

Alternatively, Albrecht argues that she is not responsible for wet floors on a rainy day. Feet get wet when it rains, and water from wet feet is natural accumulation. Under the so-called natural accumulations rule, "a landowner does not have a duty to remove the tracks or residue left by customers who have walked through natural accumulations of water, slush, or snow." *See Pytlewski v. United States*, 991 F. Supp. 1043, 1047 (N.D. Ill. 1998) (collecting cases).

As Albrecht sees things, a rainy day plus wet feet equals no liability. "Even if Albrecht had knowledge of the water on the floor, if the water was . . . tracked in from any patron's feet or from shopping carts, it would be considered a natural accumulation." *See* Defs.' Resp., at 3 (Dckt. No. 19). "The evidence suggests that the slippery condition came from tracked in water or from the cart [Chan] drove into the store." *Id.* at 6.

The situation is more complicated than soggy footwear. The natural accumulations rule does not apply if the landowner aggravated the natural accumulation. *See Pytlewski*, 991 F.

12

Supp. at 1047 ("There may be liability, however, if the plaintiff establishes that [her] injuries resulted from an unnatural accumulation of ice, snow, or water *or from a natural accumulation which was aggravated by the landowner*." (emphasis added)).

It is possible to read the complaint to allege more than a hazard caused by water from wet feet. As Chan points out, "[w]ater is not the sole issue in this incident. What is at issue is the dangerous tile flooring when it got wet." *See* Pl.'s Reply, at 3 (Dckt. No. 20). Chan asserts that the store had an "ultra-slippery tile floor." *Id.* Chan thinks that the store's floor posed an abnormally high risk to patrons when the floor was wet – a risk high enough that Albrecht should have known about it.

That's a generous reading of the complaint. But it is a plausible reading. The complaint does allege that Target "installed flooring that was slippery when it was wet." *See* Cplt., at ¶ 5 (Dckt. No. 1-1). The complaint does not allege that Albrecht knew that the floors were super-slippery, at least not explicitly. But it does allege that Albrecht knew or should have known of the hazard created by wet floors. *Id.* at ¶ 19. At this early stage, that's enough to overcome the natural accumulations rule.

To be sure, Chan might not prevail when all of the facts come to light. Some courts have expressed skepticism when a plaintiff cannot point to a specific reason why the floor was extra-slippery. *See Stypinski v. First Chicago Bldg. Corp.*, 574 N.E.2d 717, 719 (Ill. App. Ct. 1991) ("Plaintiff . . . made no specific allegations . . . that the floor or any materials used in the floor were particularly slippery and dangerous when wet.").

And in any event, the slipperiness of the floor is a question for summary judgment, not a motion to dismiss or a motion about fraudulent joinder. *See, e.g.*, *Reed v. Galaxy Holdings, Inc.*, 814 N.E.2d 632 (Ill. App. Ct. 2009); *Richter v. Burton Inv. Props., Inc.*, 608 N.E. 1254 (Ill. App.

13

Ct. 1993); *Macias v. Wal-Mart Stores, Inc.*, 2021 WL 1531187 (Ill. App. Ct. 2021); *Porzezinski v. Wal-Mart Stores, Inc.*, 2015 WL 4874014 (Ill. App. Ct. 2015); *Winberg v. Lubeoil Dev. Co., Inc.*, 2014 WL 1758666 (Ill. App. Ct. 2014); *Fore v. Silaggi*, 2012 WL 6969755 (Ill. App. Ct. 2012).

In short, Albrecht has not shown that the claim against her has "no reasonable chance of success." *See Majewski*, 2021 WL 76819, at *3. So Albrecht has failed to carry her burden of showing fraudulent joinder.

Chan had a colorable basis to bring a claim against Albrecht, so there is no fraudulent joinder. Albrecht belongs in the case, so the case belongs in state court.

## Conclusion

For the foregoing reasons, Plaintiff Chan's motion to remand is granted. Defendant Albrecht's motion to dismiss is denied as moot.

Date: March 5, 2025

Steven C. Seeger
United States District Judge